**F I L E D**
United States Court of Appeals
Tenth Circuit

**DEC 16 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

WILLETTE WHITESKUNK,

    Defendant-Appellant.

No. 97-1407

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 97-CR-193-S)**

Andrew A. Vogt (Henry L. Solano, United States Attorney, with him on the brief), Assistant United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

Michael G. Katz, Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Before **TACHA, BRORBY** and **KELLY**, Circuit Judges.

**BRORBY**, Circuit Judge.

    Defendant, Ms. Willette T. Whiteskunk, pleaded guilty to one count of involuntary manslaughter in violation of 18 U.S.C. §§ 1153 and 1112(a) and was

sentenced to twenty-four months imprisonment. The district court departed upward three levels from the standard Guideline range for involuntary manslaughter to arrive at the final sentence. Ms. Whiteskunk now appeals the trial court's decision for upward departure. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Finding the district court gave an insufficient explanation for the degree of departure, we reverse and remand for resentencing.

BACKGROUND

Ms. Whiteskunk's conviction stems from an alcohol-related accident on the Southern Ute Indian Reservation in which Mrs. Mary V. ("Virginia") Fleming lost her life. The Presentence Investigation Report indicates that on April 30, 1997, Ms. Whiteskunk, an enrolled member of the Southern Ute Tribe, was driving a pickup truck at a rate of seventy-eight miles per hour eastbound on Highway 172 within the boundaries of the Southern Ute Indian Reservation near Ignacio, Colorado. At the same time, the decedent, Mrs. Fleming, was riding a motorcycle westbound on Highway 172 traveling about fifty-five miles per hour. Ms. Whiteskunk veered across a double yellow line into the westbound lanes of the highway and struck Mrs. Fleming head-on, killing her instantly. Tests taken shortly after the accident showed Ms. Whiteskunk had a blood alcohol content of

.212 percent, more than twice the legal limit. This was not the first time Ms. Whiteskunk had been driving while intoxicated. She previously had been arrested and convicted in tribal court of drunk driving, but the offense was not included in her criminal history because it occurred more than ten years earlier.

The district court found several other events on the day of the accident made the case unusual, and indicated Ms. Whiteskunk acted with a higher than normal degree of recklessness. Just after midnight on the day of the accident, as Ms. Whiteskunk was sitting in her truck, she was approached by a Southern Ute police officer who, upon seeing her state of intoxication, took her keys and told her she was not going to drink and drive. Later that same morning, Ms. Whiteskunk asked her sister to drive her to the police station to retrieve her keys. Ms. Whiteskunk's husband admitted after the accident that he and his wife had been drinking since around 8:00 a.m. At about 12:00 p.m., only two hours before the accident, Ms. Whiteskunk reportedly entered a bar, but was refused service because she looked "like [she] had partied all night" and smelled of alcohol. She left the bar and drove away, at which time a bar employee called the Colorado State Patrol to report her license number. At 1:38 p.m., just minutes before the fatal accident, an unknown caller reported Ms. Whiteskunk driving erratically and nearly colliding with the caller's vehicle. Only a few minutes later, the

emergency dispatcher received a call about the accident in which Mrs. Fleming was killed.

In the Presentence Investigation Report, Ms. Whiteskunk's base offense level was set at 14, as prescribed for violations of 18 U.S.C. § 1112(a) in the United States Sentencing Guidelines § 2A1.4(a)(2). A two-level downward adjustment was made for acceptance of responsibility under U.S.S.G. §3E1.1(a), to arrive at a total offense level of 12. With a Criminal History Category of I, Ms. Whiteskunk's Guideline range for imprisonment was calculated at 10-16 months.

At the sentencing hearing, the district court decided to depart upward three levels from the base offense level, finding certain aggravating factors in the presentence report indicated "the defendant's conduct ... exceeded reckless behavior, and therefore, exceeded the guidelines." The district court rested its decision on a number of factors including: (1) Ms. Whiteskunk's blood alcohol content, which was more than twice the legal limit; (2) a prior conviction for drunk driving, which put her on notice of the "illegality and the dangerousness of drinking and driving"; and (3) multiple opportunities for Ms. Whiteskunk to correct her behavior before the accident.

Ms. Whiteskunk asserts the district court erred because it: (1) abused its discretion in departing upward on the bases that death resulted and that her conduct exceeded the standard of recklessness, (2) failed to explain the upward departure, and (3) failed to provide adequate notice of intent to depart upward and the basis for the departure.

DISCUSSION

I. Upward Departure Analysis – An Overview

*United States v. Collins*, 122 F.3d 1297 (10th Cir. 1997), sets forth our general framework for reviewing Sentencing Guideline departures following the Supreme Court's landmark decision in *Koon v. United States*, 518 U.S. 81 (1996). A sentencing court is permitted to depart from the Guidelines after determining a defendant's offense level, criminal history category, and the applicable Guideline range "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). The district court must distinguish whether the case falls under the category of a "heartland case" or an "unusual case." *See Koon*, 518 U.S. at 93. In *Koon*, the Court explained the Sentencing Commission intended for "'sentencing courts to treat each guideline

as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes.'" *Id.* (quoting U.S.S.G. ch. 1 pt. A, intro. comment. 4(b)). If the case falls outside the heartland (*i.e.*, is not the usual type of case), the court may decide to depart from the prescribed sentencing range. *Id*.

When deciding whether to depart from the Guidelines, the district court may not consider certain "forbidden" factors.[1] *Collins*, 122 F.3d at 1302. Otherwise, the Sentencing Guidelines do not limit or restrict the grounds available for departure. The Guidelines also list factors that are encouraged factors for departure. If the factor is an encouraged factor, "the court is authorized to depart if the applicable Guideline does not already take it into account." *Id.* If the factor is a discouraged factor, or one already taken into account under the Guidelines, "the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id*. It is up to the district court to determine whether certain factors take the case out of the "heartland," and "make a refined assessment of the many facts bearing on the outcome,

---

[1] The forbidden factors include characteristics like race, sex, national origin, creed, religion, and socioeconomic status (U.S.S.G. § 5 H1.10); lack of guidance as a youth (*id*. § 5 H1.12); drug or alcohol dependence (*id*. § 5H1.4); and economic duress (*id*. § 5K2.12).

informed by its vantage point and day-to-day experience in criminal sentencing."
*Koon* 518 U.S. at 98.

On appeal, the district court's decision to depart is reviewed "under a unitary abuse-of-discretion standard which 'includes review to determine that the discretion [of the district court] was not guided by erroneous legal conclusions.'" *Collins* 122 F.3d at 1302 (quoting *Koon*, 518 U.S. at 100). This standard limits appellate courts' scope of review, leaving district courts with "much of their traditional sentencing discretion." *Koon*, 518 U.S. at 97. The essential nature of the question presented, whether legal or factual, guides our standard of review. *Collins*, 122 F.3d at 1303. In the usual case, where the court's decision whether to depart rests on factual findings, the district court's decision is entitled to substantial deference. *See Koon*, 518 U.S. at 98 ("[D]istrict court's decision to depart from the Guidelines ... will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court."); *United States v. Rivera*, 994 F.2d at 942, 951 (1st Cir. 1993) (in many cases, "district court's [departure decision] ... will not involve a 'quintessentially legal' interpretation of the words of a guideline, but rather will amount to a judgment about whether the given circumstances, as seen from the district court's unique vantage point, are usual or unusual, ordinary or not ordinary, and to what

extent."). If, however, the district court's decision rests primarily on a legal conclusion, for instance whether a factor is a permissible ground for departure, the appellate court's review is plenary. *Collins*, 122 F.3d at 1303.

> *Collins* established a four-step inquiry to guide our analysis. We must examine:
>
> > (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable.

122 F.3d at 1303. We need not give deference to the district court on the first issue, which is essentially a legal conclusion, but we must give substantial deference on the second question because it involves factual conclusions. All of these steps are subject to a unitary abuse of discretion standard. *Id*.

II. Departure Analysis – Present Case

A. Permissibility of Departure Factors

We first examine the district court's decision to depart upward to determine if the factors the court relied on were permissible. Again, because this is a legal analysis, we do not defer to the district court's decision on this matter. *Id*. Ms. Whiteskunk argues the factors the district court cited for upward

departure, (1) death resulting from the conduct, and (2) excessive recklessness, were already taken into account under the involuntary manslaughter Guideline, and were, therefore, improper bases for departing from the Guideline range. We examine the permissibility of each factor individually.

1. Departure for Death Resulting From the Conduct

We agree with Ms. Whiteskunk that if the district court relied on the fact a death resulted from the defendant's conduct to justify upward departure, it was improper. Because, the unlawful killing of a human being is, in fact, an element of involuntary manslaughter, *see* 18 U.S.C. § 1112(a), the Guideline provision for that offense already contemplates a resulting death. Since death cannot exist in varying degrees for the court to consider ( *i.e.*, the factor is either present or it is not), it is generally an impermissible factor for departure. Multiple deaths resulting from defendant's conduct is an exception to this general rule, and presents a permissible ground for departure from the standard involuntary manslaughter Guideline range. However, multiple deaths did not occur in this instance. Accordingly, if the district court based its decision to depart on the fact a death resulted, it was error.

However, we do not believe the district court rested its decision on this

factor. The judge mentioned U.S.S.G. § 5K2.1 ("death resulting provision") just prior to enumerating his reasons for departing upward during the sentencing hearing, but it does not appear from the record the court relied on the death resulting provision to justify upward departure. No further reference is made to § 5K2.1, and it appears from the record the district court departed from the Guideline solely on other factual bases indicating a degree of recklessness beyond that contemplated under the Guidelines.

Even assuming *arguendo* the district court did depart on the basis of an invalid factor like the "death resulting provision," we do not necessarily need to vacate the district court's opinion and remand for resentencing to rid the court's decision of any error the consideration of an impermissible factor may have caused. If the sentencing decision rested on other permissible factors in addition to the improper factor, and we determine the district would have imposed the same sentence even in the absence of the improper factor, then we will not disturb the decision. *See Koon*, 518 U.S. at 113 (stating if the district court based a departure on both valid and invalid factors, the court should remand the case unless it determines the district court "would have imposed the same sentence absent reliance on the invalid factors" (citing *Williams v. United States*, 503 U.S. 193, 203 (1992)). Due to the absence of any further reference to

-10-

departure based on U.S.S.G. § 5K2.1 in the court's factual findings at the sentencing hearing, we believe the district court would have imposed the same sentence even in the absence of the invalid factor.

### 2. Excessive Recklessness

Recklessness exceeding the Guideline standard is a permissible factor for the district courts to consider for departure. Even though the involuntary manslaughter Guideline already contemplates reckless conduct and the usual case of drunk driving resulting in death, we nonetheless hold that a district court may still examine the degree of recklessness in a given case to determine whether this factor exists to such an exceptional level it takes the case outside the "heartland" of usual involuntary manslaughter cases. *See* 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0, p.s. (court may impose a sentence outside Guideline range if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission").

Our decision is in accord with the Fourth Circuit's opinion in *United States v. Terry*, 142 F.3d 702 (4th Cir. 1998). That case addressed whether the factor of endangering public safety under U.S.S.G. § 5K2.14 was present to such an exceptional degree as to remove the case from the heartland and permit an

upward departure from the reckless involuntary manslaughter Guideline. In *Terry*, the district court made a substantial upward departure from the Guideline range relying on several different factors. 142 F.3d at 705. The first factor the court considered, and the only factor of relevance to the case before us, was the danger to the public created by the defendant's reckless driving. *Id*. The court found U.S.S.G. § 2A1.4 "already took into account" the defendant's reckless driving as evidenced by the base offense level increase from ten to fourteen. *Terry*, 142 F.3d at 706. Because the involuntary manslaughter Guideline already considered the danger to the public created by the defendant's recklessness, departure on that basis generally would be inappropriate. *Id*. However, the court went on to rule that "an upward departure would be permitted if [defendant's] reckless driving was 'present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.'" *Id*. (quoting *Koon*, 518 U.S. at 96). The case was then remanded so the district court could "determine in the first instance whether the danger created by [defendant's] reckless conduct was outside the 'heartland' of the typical involuntary manslaughter case involving reckless driving." [2] *Id*. at 707.

---

[2] Several other circuits have addressed the same or similar issue, but have yet to publish an opinion directly on point. *See United States v. Two Crow*, 124 F.3d 208, 1997 WL 572862 (8th Cir. 1997) (unpublished decision) (ruling the district court did not abuse its discretion by ordering an upward departure from involuntary manslaughter guideline because the district court found that two

-12-

Although the district court in the case before us did not cite a specific provision like U.S.S.G. § 5K2.14 as grounds for departure, we apply the same analysis as the *Terry* court. Even though recklessness, like endangering the public, was already considered under the involuntary manslaughter Guideline, U.S.S.G. § 2A1.4(a)(2), it is still permissible for the district court to consider the degree of recklessness and, within it's discretion, depart upward if the facts take the case outside the "heartland" of typical cases within the Guideline range.

---

deaths occurred, and the defendant's exceptionally high level of intoxication and rate of speed exceeded merely reckless conduct and approached intentional conduct); *United States v. Rowbal*, 105 F.3d 667, 1996 WL 747911 (9th Cir. 1996) (unpublished decision) (ruling upward departure from involuntary manslaughter guideline was warranted where district court cited factors like excessive speed and blood alcohol level, reckless conduct, and callous disregard for the safety of others, which removed the case from the heartland of typical cases. "Although drunkenness and recklessness were considered by the Commission when it formulated § 2A1.4, in the instant case these *factors were present to an exceptional degree*." *Id*. at \*2 (emphasis added)); *United States v. Chambers,* 940 F.2d 653, 1991 WL 137232 (4th Cir. 1991) (unpublished decision) (determining upward departure from Sentencing Guideline for involuntary manslaughter was warranted where the defendant had prior convictions for drunk driving, tried to avoid arrest and drove at a high rate of speed. This conduct went "well beyond the degree of deviation from the standard of care contemplated by the term 'reckless.'" *Id*. at \*2); *United States v. Clampitt*, 967 F.2d 592, 1992 WL 120463 (9th Cir. 1992) (unpublished decision) (case remanded because district court failed to provide an explanation for its decision to depart, but court ruled a legal basis for departure was warranted because defendant's drunk driving created a serious threat to the public welfare under U.S.S.G. § 5K2.14 that was not subsumed as an element under the Sentencing Guideline for involuntary manslaughter).

Appellant argues that recklessness under the involuntary manslaughter guideline, U.S.S.G. § 2A1.4(a)(2), is an all-or-nothing proposition; either a person is reckless or she is not, and a court cannot and should not distinguish a case for sentencing purposes based on varying degrees of recklessness. We disagree. Under the law, we designate a rather broad category of conduct as "reckless." Some of the conduct falling within the domain we call "reckless behavior" is actually closer to mere negligence, while other behavior within the range of recklessness definitely approaches intentional conduct. Yet, we place all of these varying degrees of conduct under one label. Admittedly, it is often necessary to draw artificial lines when classifying defendants' conduct, but it would be unfair not to recognize and accommodate this varying spectrum of culpability whenever possible. The sentencing phase is one aspect of the process where the artificial labels applied to classes of conduct need not necessarily constrain the court. If, in the district court's discretion, it finds the facts of the particular involuntary manslaughter case indicate a degree of recklessness that falls on the periphery of reckless conduct – either minimally reckless or excessively reckless – then the court should be free to depart on that basis for sentencing purposes. *See United States v. Smith*, 133 F.3d 737, 751 (10th Cir. 1997) ("An extra measure of criminal depravity is precisely the type of factual circumstance the departure mechanism is designed to address" (citing 18 U.S.C.

§ 3553(b); U.S.S.G. § 5K2.0)),  *cert. denied* , 118 S. Ct. 2306 (1998).  We emphasize that our decision in this matter is not intended to establish a theoretical new level of culpable conduct.  Instead, our intent is to allow sentencing courts the discretion to recognize the extreme cases that arise within the category of conduct categorized as reckless.     In the usual case, the sentencing court will exercise its discretion in this regard within the established guideline range, but when the degree of recklessness is exceptional, either minimally or extremely, then the circumstances may warrant departure.[3]

Appellant also argues that since other sections of the Guidelines expressly provide for departure based on elements already considered in formulating the standard Guideline range, *see, e.g.*, U.S.S.G. § 3C1.2, comment. (n. 2), and the involuntary manslaughter Guideline contains no such explicit allowance, any departure based on excessive recklessness is improper.  Appellant reasons that if the Sentencing Commission specifically stated in certain Guidelines that departure was permissible based on the presence of a factor already considered but present to an exceptional or varying degree, then the omission of similar language in other Guidelines must have been intentional.  However, we note that only a few of

---

[3] We note excessive recklessness as a departure factor may be a subject the Sentencing Commission should address.

the Guidelines contain express provisions for departure. If we accepted Appellant's proposition, our decision would limit the sentencing courts' ability to fairly respond to unusual cases, and seriously undermine the Sentencing Commission's own instructions. The Commission stated in the introductory remarks to the Guidelines that, with the exception of certain forbidden factors, it "does not intend to limit the kinds of factors, *whether or not mentioned anywhere else in the guidelines*, that could constitute grounds for departure in an unusual case." U.S.S.G. ch. 1, pt. A, intro. comment. 4(b) (emphasis added). The Guidelines are intended to provide courts with the flexibility necessary to address the extreme and "unusual cases outside the range of the more typical offenses for which the guidelines were designed." *Id*. In light of this commentary and the Supreme Court's instruction in *Koon*, we will not interpret the absence of express permission to depart on the basis of a factor already considered in the Guideline but present to an exceptional degree to imply such a departure is forbidden.

We do not believe our decision to allow departure on the basis of excessive recklessness will destroy the intended uniformity of sentencing under the Guidelines or cause unjustified disparities in sentencing. Instead, it will reinforce the ideals of fairness and flexibility within the range of reasonableness the Guidelines establish for sentencing courts, and continue "the federal judicial

tradition ... to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon* 518 U.S. at 113.

B.  Justification for Upward Departure and Sufficiency of the Record

Having decided recklessness exceeding the Guideline standard for involuntary manslaughter is a permissible factor for upward departure, we must now determine whether the factual bases the district court cites are sufficient to remove the case from the "heartland" and warrant an upward departure.  We examine the court's decision to depart upward under a unitary abuse of discretion standard, giving deference to the district court on these matters.  *See Koon*, 518 U.S. at 98-99.  We look only to see if "the factual circumstances from the vantage point of the district court make this the atypical case." *Collins* 122 F.3d at 1303 (quoting *Rivera*, 994 F.2d at 951-52).  If the case is a typical one, the "court must impose a sentence within the applicable Sentencing Guidelines range." *United States v. Jones*, 158 F.3d 492, 496(10th Cir. 1998) (citing 18 U.S.C. §3553(a), and *Koon* 518 U.S. at 85).  Because of the factual nature of this inquiry, we simultaneously consider the sufficiency of the record to support the bases for departure.

The district court specifically cited several factual circumstances it believed removed the case from the heartland and justified upward departure. The court emphasized Ms. Whiteskunk's reckless conduct, highlighting the following facts: (1) her blood alcohol content was more than twice the legal limit; (2) she sustained a prior conviction for driving while intoxicated – putting her on notice of her own propensity to drink and drive and the dangerousness of such conduct; and (3) she had at least three opportunities to correct her behavior, first, when her keys were confiscated and she was told she was unfit to drive; second, when she was refused service at a bar because of her state of intoxication; and third, when she narrowly avoided an accident with another vehicle just minutes before hitting Mrs. Fleming.

Acknowledging the district court's special ability to judge "'the "ordinariness" or "unusualness" of a particular case,'" *Koon*, 518 U.S. at 99 (quoting *Rivera*, 994 F.2d at 951), we find, under these particular facts and the record before us, the district court did not abuse its discretion when it ruled Ms. Whiteskunk's conduct was excessively reckless and thereby removed the case from the "heartland" of typical cases under the Guidelines. The district court made no "clear error of judgment," nor "exceeded the bounds of permissible choice in the circumstances." *United States v. Ortiz*, 804 F.2d 1161, 1164 (10th

Cir. 1986). The record sufficiently supports the factual bases the district court cites to remove the case from the usual Guideline range.

C. Reasonableness of Departure

Finally, we must determine whether the district court's decision to depart upward three levels was reasonable under the circumstances. See 18 U.S.C. § 3742(f)(2). Our review of the sentencing court's degree of departure is deferential. *See Collins*, 122 F.3d at 1303 (approving a unitary abuse of discretion standard). In making this decision, we

> consider the district court's reasons for imposing the particular sentence together with factors such as: "the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities."

*Collins*, 122 F.3d at 1308-09 (quoting *United States v. White*, 893 F.2d 276, 278 (10th Cir. 1990) (citing 18 U.S.C. § 3742 (e)(3) and 18 U.S.C. § 3553(a))).

Even though the district court articulated a factual basis for departing from the Guideline range, this does not automatically suffice to explain the degree of departure. *See United States v. Kalady*, 941 F.2d 1090, 1100 (10th Cir. 1991) (district court bears burden of ensuring the record contains enough information to allow an appellate court to determine how the degree of departure was decided).

Neither the record nor the presentence report, nor the sentencing court, included any explanation or methodological basis for how the district court selected a three-level degree of departure. Failure to clearly articulate the basis for the court's degree of departure makes our review of reasonableness difficult if not impossible, and leaves us to "speculate as to reasoning that might have been employed by the sentencing court to arrive at the particular sentence." *United States v. Gardner*, 905 F.2d 1432, 1436 (10th Cir.), *cert. denied*, 498 U.S. 875 (1990).

In *Collins*, we rejected the notion that the *Koon* unitary abuse of discretion standard changed our pre-*Koon* mechanistic approach requiring the district court to state with particularity and with reference or analogy to the Guidelines the basis for its degree of departure. *Collins*, 122 F.3d at 1309 ("district court 'must specifically articulate reasons for the degree of departure'" (quoting *United States v. Yates*, 22 F.3d 981, 990 (10th Cir. 1994)); *United States v. Jackson*, 921 F.2d 985, 991 (10th Cir. 1990) ("may use any 'reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure,'" which includes using extrapolation from or analogy to the Guidelines (quoting *United States v. Harris*, 907 F.2d 121, 124 (10th Cir. 1990)); *see also United States v. Flinn*, 987 F.2d 1497, 1502 (10th Cir. 1993) (court decided it would "not

commence a reasonableness analysis unless the district court has referenced the Guidelines in its rationale for selecting a degree of departure"). Since *Collins*, our decisions have continued to maintain this standard. We have declined to follow the Ninth Circuit's less rigid analysis of the district court's degree of departure espoused in *United States v. Sablan*, 114 F.3d 913, 918-19 (9th Cir. 1997) (en banc), *cert. denied*, 118 S. Ct. 851 (1998), where that court abolished the requirement that district courts justify their degree of departure by drawing analogies to the Sentencing Guidelines.[4] *See Collins*, 122 F.3d at 1309.

In the present case, the district court gave almost no rationale for its degree of departure from the Guideline range, stating only the departure is warranted because it "more appropriately reflects the dangerousness of the defendant's conduct, as well as the extent to which risked [sic] the potential death of another." This explanation does nothing more than restate the justification for

---

[4] Appellees cite *Smith*, 133 F.3d 737, as somehow abrogating the mechanistic approach set out in *Collins*. An examination of that case reveals no conflict with prior precedent, but an affirmation of the requirement that the district court specifically articulate "'reasons for the imposition of the particular sentence.'" *Id.* at 752 (quoting *Williams*, 503 U.S. at 203-04). In *Smith*, the district court had "articulated multiple reasons for the degree of departure," and "expressly considered the factors outlined in 18 U.S.C. §3553(a)(2)." *Id.* We reaffirm our requirement that the district court explain with particularity – preferably with reference or analogy to the guidelines – the basis for the degree of upward departure.

upward departure and "does not fulfill the separate requirement of stating the reasons for imposing the particular sentence." *Flinn*, 987 F.2d at 1502. In departing upward, the district court should have attempted "to predict what the Sentencing Commission would have established as a guideline range had it adequately considered the circumstances justifying the departure." *Kalady* 941 F.2d at 1101. The district court's findings leave us with no "reasonable indicia" of whether "the sentence is proportional to the crime." *Id*. We do not require the district court to justify the degree of departure with mathematical exactitude, but we do require the justification to include "some method of analogy, extrapolation or reference to the sentencing guidelines." *United States v. O'Dell*, 965 F.2d 937, 939 (10th Cir. 1992).

Since the record lacks any basis upon which to determine whether the departure was reasonable, we must remand for resentencing with instructions to the district court to make sufficient findings to support the methodology used to determine the degree of upward departure.

III. Notice Requirement

Finally, we address Appellant's claim that the district court failed to give adequate notice of its intent and basis to depart upward from the Guidelines as

required in *Burns v. United States*, 501 U.S. 129 (1991). *Burns* cites Federal Rule of Criminal Procedure 32, which "requires that the district court give the parties reasonable notice that it is contemplating [departure from the Guidelines] ... specifically identify[ing] the ground on which the district court is contemplating an upward departure." *Burns*, 501 U.S. at 138-39. In the present case, the presentence report submitted by the probation officer stated plainly there was "no reason to depart from the Guideline range." The district court did not disclose its intent to upwardly depart until the actual sentencing hearing was held. Under these facts, we are dealing with "the extraordinary case in which the district court, on its own initiative and contrary to the expectations of both the defendant and the Government, decides that the factual and legal predicates for a departure are satisfied." *Burns*, 501 U.S. at 135.

However, since we have already determined a remand is necessary on other grounds, it is unnecessary for us to decide whether the district court failed to give adequate notice of its intent and basis to depart or whether any potential failure of notice was reversible error. If the defendant suffered as a result of the district court's failure to give notice as required in *Burns*, then the resentencing hearing following remand will cure the alleged harm. The defendant is now clearly on notice the district court is considering an upward departure and the bases for that

departure.

CONCLUSION

Recklessness exceeding that contemplated in the guideline standard is a permissible factor for upward departure, and the district court did not abuse its discretion, based on the facts in the record, in finding the circumstances of this case placed it outside the "heartland" of typical cases under the Guidelines. However, we hold the district court did not sufficiently explain the bases for the three-level degree of departure from the Sentencing Guidelines, an error which warrants reversal and remand for resentencing. Because we reverse and remand for resentencing, we need not decide whether notice of intent and bases for upward departure were deficient. The resentencing hearing should cure any defect in that regard. In addition, we emphasize for the purposes of resentencing that although we have decided the district court did not abuse its discretion when it determined this case fell outside the "heartland," our decision on that matter was based on the record before us on appeal. The district court should not construe our ruling to preclude the defendant from producing any *other* evidence at the resentencing hearing that may tend to refute or mitigate the original sentence imposed, or show the case is not outside the heartland under the Guidelines.

We **REVERSE** and **REMAND** to the district court with instructions to vacate the sentence and resentence in a manner consistent with this opinion.

**No. 97-1407, United States v. Whiteskunk**

**Tacha, Circuit Judge, dissenting**

I respectfully dissent only from the portion of the majority opinion finding that the district court failed to adequately explain the degree of upward departure in sentencing the defendant. I recognize that our cases require an explanation by the district judge of the degree of departure and that he or she "may use any reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure." See United States v. Collins, 122 F.3d 1297, 1309 (10th Cir. 1997) (internal quotations omitted). Nonetheless, when the reason for that departure is that the conduct exceeds the seriousness contemplated by the Guidelines, I do not believe that the district court must go through the tortured process of articulating precisely why the excessiveness, in its judgement, justifies a particular degree of departure. The degree of departure determination in a case involving a subjective judgement of the excessiveness of a defendant's conduct lies within the province of the sentencing court under the abuse of discretion standard. See Collins, 122 F.3d at 1303 (holding that decision to depart and reasonableness of departure are subject to unitary abuse of discretion standard); cf. Koon v. United States, __ U.S. __, 116 S. Ct. 2035, 2046 (1996) ("A district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference.")

Here, the judge found the defendant's conduct exceeded the recklessness

contemplated by the Guidelines. He cited as his reasons the defendant's extreme intoxication, prior drunk driving conviction, and numerous opportunities to correct her conduct prior to the accident. I am perplexed why a three-level degree of departure is so unrelated to the finding of excessive recklessness as to require remand for further elaboration. A departure unrelated to the reasons given or of extraordinary magnitude might require such an explanation. However, it seems to me that a district judge adequately justifies a sentence increase from 16 to 24 months when he gives as his reasons the facts upon which he based his determination of excessive recklessness in the initial upward departure decision. In the instant case, requiring additional explanation of why this level of recklessness merits this incremental upward departure is precisely the kind of mechanistic appellate review that Koon instructs us we are not free to employ. See Koon, __ U.S. at __, 116 S. Ct. at 2046-47. Collins and our other post-Koon cases are not to the contrary, for those cases did not involve a departure tied to greater recklessness than that contemplated by the Guidelines and explained by facts recited by the sentencing judge. See Collins, 122 F.3d at 1308-09 (finding district court properly justified level of downward departure by reducing criminal history level where court found career offender enhancement overstated defendant's criminal past and likely criminal future); United States v. Smith, 133 F.3d 737, 751-52 (10th Cir. 1997) (finding degree of upward departure for

fraudulent conduct was reasonable because it considered the seriousness of the offense, the need for punishment and deterrence, and protection against future offenses); United States v. Lowe, 106 F.3d 1498, 1503 (10th Cir. 1997) (upholding upward departure where defendant's underrepresentative criminal history category was already at maximum, so sentencing judge increased base offense level to compensate). In fact, this court in Smith recognized that the district judge's reasons for departure may be adequate to explain the level of departure as well. See Smith, 133 F.3d at 752 (relying, at least in part, on reasons, such as seriousness of the offense, articulated by the district court to support its initial departure decision in affirming a four-level upward departure).

The record in this case contains the 1997 United States Sentencing Commission Manslaughter Working Group Report prepared by the Sentencing Commission staff to aid the Commission in assessing the appropriateness of current Guideline penalties for manslaughter relative to other violent offenses. The testimony to the working group of Chief Judge Richard Battey of the District of South Dakota highlights the difficulties the sentencing judge in this case encountered. Chief Judge Battey urged the Sentencing Commission to review the Manslaughter Guidelines. See Manslaughter Working Group Report at 7, 14. I join those who urge this careful study.