**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 1 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

JASON MILLET,

      Defendant - Appellant.

No. 99-4115
(D.C. No. 99-CR-22-C)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, **KELLY**, and **MURPHY**, Circuit Judges.[**]

Mr. Jason Millet appeals from the sentencing court's imposition of an

upward departure of five offense levels for extreme psychological injury under

U.S.S.G. § 5K2.3 and extreme conduct under U.S.S.G. § 5K2.8. Mr. Millet was

charged by indictment with witness tampering under 18 U.S.C. §§

2, 1512(a)(1)(C),   see I R. (99-4105), doc. 1, and pled guilty to an information

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause is therefore ordered submitted without oral argument.

charging the offense under, 18 U.S.C. § 1512(b). The information omitted the original allegations of intent to commit murder contained in the indictment.

At sentencing, the court determined that Mr. Millet's offense level was 25 under U.S.S.G. § 2A2.2 (aggravated assault guideline) with a criminal history category of I, leading to a possible sentencing range of 57-71 months. V R. (Sent. Tr.) at 16-17. In deciding to depart upward, the court then determined that the underlying criminal conduct was analogous to assault with intent to commit murder and attempted murder (U.S.S.G. § 2A2.1) and determined that a departure to an offense level of 30, criminal history category I was appropriate. Id. at 28-29. The court began with the base offense level of 28 from U.S.S.G. § 2A2.1, added 8 levels (resulting in 36) because the victim sustained permanent or life-threatening injury and because the offense involved the receipt of something of pecuniary value. Id.; § 2A2.1(b). The court then deducted 5 levels (resulting in 31) for acceptance of responsibility, U.S.S.G. § 3E1.1, [1] and determined that departure to an offense level of 30 would be appropriate because "this is not murder." V R. (Sent. Tr.) at 29. This resulted in a guideline range of 97-121 months, and the court sentenced Mr. Millet to the statutory maximum of 120 months imprisonment, 36 months of supervised release and $89,106 in restitution.

---

[1] The deduction should have been 3 levels, resulting in an offense level of 33, but it does not make a difference here.

On appeal, Mr. Millet argues that the upward departure (1) is unwarranted because the facts taken into consideration by the district court are covered in the Guidelines, (2) is unwarranted because hidden facts were taken into consideration in crafting the plea bargain and could not be taken into account by the district court, (3) violates separation of powers under the U.S. Constitution, (4) is against public policy, and (5) is fundamentally unfair. Our jurisdiction arises under 18 U.S.C. § 3742(a) and we affirm.

Background

Jason Millet was hired by a third party to intimidate and prevent a confidential informant, Linda Gren Hadden, from cooperating with an ongoing narcotics investigation. Around midnight, on July 12, 1998, Jason and his brother, Shawn, wearing overalls and masks, rode bicycles to Ms. Hadden's apartment. After arriving at the apartment, Jason saw Ms. Hadden through a window and fired between five and seven shots into the apartment at close range. The two brothers then fled the scene to an adjacent location. They were apprehended soon after. Shawn Millet pled guilty to misprision of a felony, and was sentenced to 36 months imprisonment based on an upward departure, 12 months supervised release, and $89,106 in restitution. His sentence was affirmed on appeal. See United States v. Shawn Millet, No. 99-4105, 2000 WL 797334

(10th Cir. Apr. 27, 2000).

Ms. Hadden was hit five times: in the face, throat, shoulder, hip, and left arm. She required extensive surgery and was hospitalized for six weeks following the surgery. The following paragraphs from the presentence report describe the resulting impact:

> 15. As a result of damage to her face, the victim lost most of her tongue and now speaks with an impediment. Her mandible was completely destroyed, and she has very little chin. . . . Because of scarring around her lips, she has difficulty eating and drinking without drooling. All of her lower teeth were blown out, and all but three were replaced during surgery. In summary, the victim was severely damaged by these injuries and reported that she does not want to be seen in public. . . .
>
> 16. Ms. Hadden is living with acquaintances who are helping her. She reported taking five types of medication in order to sleep and help control the constant pain. She indicated having severe nightmares since the attack occurred.
>
> 17. Emotionally, this experience has been devastating. Ms. Hadden indicated that some children screamed when they saw her in the hospital following surgery. She suffered severe psychological distress, including deep depression, and has contemplated suicide. . . .

PSR (VII R.) at 5.

Discussion

We review the district court's decision for upward departure from the Sentencing Guidelines under a unitary abuse of discretion standard. See Koon v. United States, 518 U.S. 81, 98-99 (1996); see also United States v. Collins, 122 F.3d 1297, 1302 (10th Cir. 1997). In doing so, we evaluate four components: (1) whether the departure is based upon a permissible departure factor; (2) whether the departure factors relied on by the district court remove the defendant from the heartland of the Guidelines; (3) whether the departure is sufficiently supported by the facts in the record; and (4) whether the degree of departure is reasonable. See United States v. Bartsma, 198 F.3d 1191, 1195 (10th Cir. 1999).

A.    Mr. Millet's Contentions

Mr. Millet first argues that upward departure is not appropriate for factors already taken into account in the Guidelines. He suggests the psychological injuries of Ms. Hadden fall under the specific offense characteristics for "serious bodily injury" contained in the guideline applicable to the offense of conviction, aggravated assault. See U.S.S.G. § 2A2.2(b)(3)(B) (calling for a four-level increase for "serious bodily injury"). While "serious bodily injury" may mean "injury involving . . . the protracted impairment of a function of a . . . mental faculty," U.S.S.G. §1B1.1, comment. (n.(1)(j)), it does not "mean that in an aggravated assault context, § 2A2.2(b) takes into account all of the extraordinary

- 5 -

psychological injuries covered by § 5K2.3." United States v. Jacobs, 167 F.3d 792, 801 (3rd Cir. 1999) (footnote omitted). Moreover, the facts of this case go well beyond the protracted impairment of a mental faculty addressed by the Guidelines, taking this case out of the heartland.

Mr. Millet also contends that a departure that results in the statutory maximum (120 months) deprives him of credit for cooperating with the prosecutor, relying upon United States v. Morberg, 863 F. Supp. 511, 522 (W.D. Mich. 1994). Morberg involved the grant of a U.S.S.G. § 5K1.1 substantial assistance motion, something not involved in this case. Mr. Millet was informed during the plea colloquy that his sentence could be 10 years and that the judge could depart, II R. (Plea Tr.) at 12, 14-15. There was no promise of credit for cooperation with the prosecutor.

Mr. Millet next contends that an upward departure is unwarranted because hidden facts, known only to the prosecutor in making the charging decision, were not taken into account by the district judge. Among these facts, the PSR indicates that the victim was involved in a relationship with a drug dealer and Mr. Millet and his brother Shawn were not charged with attempted murder. Building on this argument, he contends that a departure violates separation of powers and is fundamentally unfair because the judiciary is nullifying an executive decision, ignoring the deal crafted by the prosecutor and departing upward. He also

contends that the departure is similar to an ex post facto law.

We reject all of these challenges. First, federal sentencing has always been a shared venture between the three branches of government. See Mistretta v. United States, 488 U.S. 361, 364 (1989). Second, Congress has authorized judicial departure from the Guidelines when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . . ." 18 U.S.C. § 3553(b). Third, acceptance of a plea agreement involving the dismissal of indictment in favor of a less serious charge than contained in the indictment requires an independent determination by the district court "that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines." U.S.S.G. § 6B1.2(a); see also Fed. R. Crim. P. 11(e)(1)(A), (e)(2). Finally, as the PSR makes clear, Mr. Millet's guilty plea significantly reduced his exposure from 20 years imprisonment, see 18 U.S.C. § 1512(a)(2)(B), to 10.

B.    Departure Framework Applied

Applying the proper test to the departure, we have no hesitation in affirming the sentence. First, U.S.S.G. §§ 5K2.3 and 5K2.8 are permissible grounds of departure. Second, the departure factors relied upon by the district

court remove the defendant from the heartland of the Guidelines–the district court found that the offense guideline simply did not take into account the permanent psychological injuries resulting from the horrific physical injuries inflicted upon the victim. See V R. (Sent. Tr.) at 18. It further found that the repeated firing at the victim is extreme conduct, beyond the characteristics inherently associated with the applicable guideline, even with a firearm. Id. at 22. These findings are deserving of substantial deference, see Collins , 122 F.3d at 1303, and correct.

Moving on to the third part of the analysis, the record is replete with evidence of the extreme nature of Ms. Hadden's psychological injuries and that the trauma inflicted is greater than normal. See United States v. Okane, 52 F.3d 828, 835-36 (10th Cir. 1995). Section 5K2.3 lays out the appropriate standard in this regard.

> [P]sychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns.

In addition to the evidence related in the PSR, the court also noted the extreme psychological impact on Ms. Hadden from losing her job, losing her home because of her inability to make payments on it, her inability to appear or eat in public because of her appearance, and other impacts of the serious wounds she

received.  See V R. (Sent. Tr) at 18-22.

The record also can support extreme conduct.  Section 5K2.8 lays out the appropriate standard in this regard.

> If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct.  Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging pain or humiliation.

The PSR indicates that Mr. Millet heard the victim's voice and saw her, firing two shots at her head and several more at her chest.  The district court determined that the conduct was cruel and brutal beyond the ordinary offense, and implied that gratuitous infliction of injury may have been involved.  See United States v. Checora, 175 F.3d 782, 793 (10th Cir. 1999).  The district court did not abuse its discretion in relying upon § 5K2.8.

Finally, the district court's degree of departure was reasonable given our deferential review.  See United States v. Whiteskunk, 162 F.3d 1244, 1253 (10th Cir. 1998).  A district court must "specifically articulate reasons for the degree of departure using any reasonable methodology hitched to the Sentencing Guidelines, including extrapolation from or analogy to the Guidelines."  Bartsma, 198 F.3d at 1196 (citation and internal quotations omitted).  Here, the court specifically analogized to another, more appropriate guideline as discussed above.

AFFIRMED.  Defendant's motion to file a reply brief out of time is

DENIED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge