UNITED STATES of America,
Plaintiff–Appellant,

v.

**Edward B. CROUSE, Defendant–Appellee.**

No. 97–1765.

United States Court of Appeals,
Sixth Circuit.

Argued April 7, 1998.

Decided May 27, 1998.

Brian K. Delaney (briefed), Office of the U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, Jay I. Bratt (argued and briefed), Office of Consumer Litigation, U.S. Department of Justice, Washington, DC, for Plaintiff–Appellant.

David A. Dodge (argued and briefed), David A. Dodge, P.C., Grand Rapids, MI, for Defendant–Appellee.

Before: MERRITT, SILER, and CLAY, Circuit Judges.

## OPINION

SILER, Circuit Judge.

The government appeals the sentence imposed on defendant, Edward B. Crouse, following his conviction for the interstate shipment and sale of adulterated orange juice in violation of the Food Drug and Cosmetic Act, 21 U.S.C. §§ 331(a) and 333(b)(recodified as § 333(a)(2) after July 22, 1988). The district court departed downward from the range mandated by the United States Sentencing Guidelines ("USSG" or "Guidelines") and imposed a sentence of 12 months of home confinement. The government argues that the extent of the departure granted by the district court was unreasonable. We agree and, for the reasons that follow, VACATE Crouse's sentence and REMAND for resentencing.

### I.

The underlying facts leading to Crouse's conviction are not in dispute in this appeal and can be found in *United States v. Kohlbach,* 38 F.3d 832, 833–35 (6th Cir.1994).

Crouse pled guilty to causing the interstate shipment of adulterated orange juice, and the district court calculated his final offense level to be 19.[1] Because he had no prior convictions, the Guidelines called for a sentence of 30 to 37 months' imprisonment. However, the district court granted Crouse's request for a downward departure of 13 levels to a Guideline range that would allow a sentence of home confinement in place of imprisonment.[2]

---

1. As part of the consideration for his guilty plea, Crouse was sentenced under the 1987 Guidelines. Unless otherwise noted, citations are to the 1987 Guidelines.

2. The district judge stated that he was departing downward 6 levels to reach a sentencing range that would allow a 12–month sentence. *Kohlbach,* 38 F.3d at 838. However, this court viewed the departure as an even greater one "because the guidelines do not allow home con-

The district court sentenced Crouse to 12 months of home confinement and ordered him to pay a fine of $250,000 and all costs associated with the monitoring of his home confinement. It based the departure on Crouse's record of community service, its desire to achieve proportionality in sentencing among Crouse and his co-conspirators, and the extensive adverse publicity and business losses that Crouse suffered as a result of his conviction.

The government appealed the sentence to this court, which vacated the sentence and remanded for resentencing. *Kohlbach,* 38 F.3d at 842. We found "that the circumstances on which the district judge relied to depart below the guidelines were not of a sufficiently unusual kind or degree that warranted a departure." *Id.* at 838. We specifically noted that it is not unusual for white-collar offenders to be involved in community activities and that the "guidelines already considered the nature of white-collar crime and criminals when setting the offense levels that govern this offense." *Id.* at 839.

On remand, Crouse attempted to introduce additional evidence of his civic contributions. However, the district court viewed itself as bound by the law of the case and refused to permit further evidence. It recognized that Crouse had already served one year of home confinement and therefore departed downward 4 levels to give him credit for that time served. The government did not object to that 4-level departure. Therefore, based on an offense level of 15, the court sentenced Crouse to 18 months' imprisonment to be followed by one year of supervised release.

On the second appeal, we noted that "the law of the case doctrine does not directly apply to resentencing" and "that sentencing issues may be revisited de novo on remand from the court of appeals." *United States v. Crouse,* 78 F.3d 1097, 1100 (6th Cir.1996). However, this error by the district court was harmless because "the court was basically correct when it concluded that *Kohlbach* meant that Crouse, specifically, would not qualify for the reduction [for community ser-

vice], based on the type of evidence before the court." *Id.* at 1101. We therefore upheld the 18-month sentence imposed by the district court.

Crouse then appealed that decision to the United States Supreme Court. It remanded the case to this court "for further consideration in light of *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)." *Crouse v. United States,* —— U.S. ——, 117 S.Ct. 39, 136 L.Ed.2d 3 (1996).

We then remanded the case to the district court for resentencing in light "of the various levels of discretion accorded the district court, and this court's continuing power to supervise for errors of law." *United States v. Crouse,* 108 F.3d 1377 (6th Cir. 1997).

On remand, the district court "resentence[d] Mr. Crouse exactly as it sentenced him on November 22, 1993, to 12 months' probation, to a fine of $250[,000], and to the terms and conditions of that probation which called for home confinement." It then found that the sentence imposed had been served.

In reaching its sentencing decision, the district court read *Koon* expansively in terms of the discretion that it vested in district court judges and therefore concluded "that a significant departure based upon good works ... is in fact merited." It also relied upon Crouse's exemplary behavior during the pendency of his appeals, Crouse's loss of reputation and of his business, and the goal of reaching a proportional sentence in comparison to Crouse's co-conspirators.

## II.

This court reviews a district court's decision to depart downward from the Guidelines for an abuse of discretion. *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The Court held that "a district court's decision to depart from the Guidelines ... will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." *Id.* at 98, 116 S.Ct. at 2046 (citations omitted). "Before a departure is

finement as a prison substitute for offense level 13. *See* U.S.S.G. § 5C1.1." *Kohlbach,* 38 F.3d at 838. For a defendant with a criminal history

category of I, home confinement would only have been a substitute for an offense level of 6 or less.

permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Id.* This determination requires "a refined assessment of the many facts bearing on the outcome, informed by [the sentencing court's] vantage point and day-to-day experience in criminal sentencing." *Id.* at 98, 116 S.Ct. at 2046–47. The Court concluded that district courts have an "institutional advantage" over appellate courts in making this determination. *Id.* at 98, 116 S.Ct. at 2047.

However, the Court also concluded that "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point." *Id.* "The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* at 100, 116 S.Ct. at 2048.

■ After determining that the departure by the district court was not based on impermissible factors, this court reviews any sentence that is "outside the applicable guideline range" for reasonableness. 18 U.S.C. § 3742(e)(3); *United States v. Barajas–Nunez*, 91 F.3d 826, 834 (6th Cir.1996).

The reasonableness determination looks to the amount and extent of the departure in light of the grounds for departing. In assessing reasonableness under § 3742(f)(2), the Act directs a court of appeals to examine the factors to be considered in imposing a sentence under the Guidelines, as well as the district court's stated reasons for the imposition of the particular sentence. § 3742(e). A sentence thus can be "reasonable" even if some of the reasons given by the district court to justify the departure from the presumptive guideline range are invalid, provided that the remaining reasons are sufficient to justify the magnitude of the departure.

*Williams v. United States*, 503 U.S. 193, 203–04, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).

### III.

### A.

The government first argues that the district court relied upon some impermissible factors in making its decision to depart downward from the Guideline range. The district court relied primarily upon Crouse's charitable works as the basis for its downward departure. The government does not challenge that ground. It does, however, challenge the additional factors mentioned by the district court as support for its departure decision: Crouse's exemplary behavior during the pendency of his appeals; the damage to Crouse's reputation within the small Lansing community and to his business; and the goal of reaching a proportional sentence among the co-defendants based upon Crouse's minimal role in the conspiracy.

A district court may depart from the applicable Guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The Guidelines list certain factors which may never form the basis for departure. *See* USSG § 5H1.10 (race, sex, national origin, creed, religion, socio-economic status); § 5H1.4 (drug or alcohol dependence). However, with the exception of those factors, the Guidelines do not "limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." USSG ch. 1, pt. A, intro. comment. 4(b). However, the Guidelines do provide "considerable guidance as to the factors that are apt or not apt to make a case atypical, by listing certain factors as either encouraged or discouraged bases for departure." *Koon*, 518 U.S. at 94, 116 S.Ct. at 2045.

Encouraged factors are those "the Commission has not been able to fully take into account in formulating precise guidelines." USSG § 5K2.0. An encouraged factor is an appropriate basis for departure only where it "is present to a degree substantially in excess of that which ordinarily is involved in the offense." *Id.* Discouraged factors are those "not ordinarily relevant to the determination of whether a sentence should be out-

side the applicable guideline range." *Koon*, 518 U.S. at 95, 116 S.Ct. at 2045 (citing 1995 USSG ch. 5, pt. H, intro., comment.). A discouraged factor should only be relied upon on "in exceptional cases." *Koon*, 518 U.S. at 95, 116 S.Ct. at 2045. Based on this statutory framework, "[a] court is strictly limited to determining merely 'whether the Commission has explicitly proscribed consideration of the factor,' and if not, 'the court must determine whether the factor, as occurring in the particular circumstances, takes the cases outside the heartland of the applicable Guideline.'" *United States v. Coleman*, 138 F.3d 616, 619–20 (6th Cir. 1998)(citing *Koon*, 518 U.S. at 108, 116 S.Ct. at 2051).

We now turn to the permissibility of each factor the district court cited as supporting its decision to depart downward. No factor cited by the district court is specifically forbidden by the Guidelines. Likewise, none of the factors is encouraged. Thus, we must determine whether the factors, which were either discouraged by the Guidelines or unmentioned in the Guidelines, made Crouse's case exceptional.

■ The district court relied primarily upon Crouse's record of civic involvement in the Lansing community as the basis for its departure. The government does not challenge this ground. Although charitable works normally are not relevant to sentencing decisions, the district court determined that Crouse's record of community service was exceptional and warranted a downward departure. As charitable work is not a forbidden ground for departure, we defer to the district court's factual finding that this case was sufficiently unusual to take it out of the heartland of white collar offenders.

■ The district court also found that Crouse's exemplary behavior during the pendency of his appeals warranted a downward departure. Specifically, the court noted the significant length of time—approximately four years—that had passed during the course of Crouse's appeals. The district court also noted that Crouse had "satisfactorily complied" with all the terms of his home confinement and was a "model probationer." We find that this ground is an impermissible

ground for a downward departure. First, it is expected that a person sentenced to home confinement, or any other punishment, will "satisfactorily comply" with the terms of his sentence. Otherwise, he can expect to suffer the consequences of that misbehavior. Secondly, the defendant's good behavior during the time of his appeals amounts to nothing more than his not having committed further crimes during that period. If this factor stands as a ground for departure, then we will be rewarding Crouse for following the law for the four years that his appeal was pending. He was supposed to have done that as a condition of his appeal bond. Finally, Crouse has received credit for the time he spent in home confinement. At his second sentencing, the court granted, and the government did not object to, a downward departure of 4 levels to account for the 12 months of home confinement. That 4-level departure adequately accounted for the fact that Crouse was a "model probationer." Thus, this factor does not support downward departure in this case.

■ The next factor cited by the district court was the "collateral consequences to Mr. Crouse." Specifically, the court noted the "loss of reputation within a small community" and the "complete loss of the business as an entity as a result of this circumstance." A defendant's ties to a community is normally a discouraged factor under the Guidelines. USSG § 5H1.6. Consideration of the loss of Crouse's business as a result of the fraud is not categorically prohibited by the Guidelines. Therefore, our review is limited to determining "whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." *Koon*, 518 U.S. at 108, 116 S.Ct. at 2051.

This particular fraud was a sophisticated scheme spanning a period of several years. It resulted in over $10 million of consumer losses. The backlash of the very community that was defrauded and the loss of a business should be expected consequences of such actions and does not take this case out of the heartland of fraud offenses contemplated by USSG § 2F1.1. Of particular guidance in this

respect is the *Koon* case in which the Supreme Court determined that the potential loss of defendants' jobs was not so unusual as to support a downward departure. *Koon,* 518 U.S. at 109–11, 116 S.Ct. at 2052. Likewise, the Eleventh Circuit, in a case involving forged prescriptions, held that the defendant's loss of his license to practice medicine did not warrant a downward departure. *United States v. Hoffer,* 129 F.3d 1196, 1204 (11th Cir.1997). In this case, a significant part of defendant's business was dependent on the fraud of which he was convicted, and a significant part of his community standing was a direct result of his position as owner of a major business. The collateral consequences to both his business and his reputation were adequately considered by the Guidelines promulgated for fraud offenses and did not warrant a downward departure from the Guideline range.

■ The final factor cited by the district court was its desire to reach proportionality in sentences among the co-defendants in this conspiracy. James Marshall, one of Crouse's co-conspirators, pled guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and one count of interstate shipment of adulterated food in violation of 21 U.S.C. § 331(b). He was sentenced to 37 months' imprisonment and 2 years of supervised release. James Benton, another co-conspirator, also pled guilty to one count of interstate shipment of adulterated food in violation of 21 U.S.C. § 331(b) and was sentenced to 30 months' imprisonment and 2 years of supervised release. Donald Wayne Wagoner, the president of the company, received a 37–month sentence for the same violation. However, the district court believed that Crouse, even though he was the CEO of the company, had played a relatively minor role in the fraud because he was not involved in day-to-day decision making and should therefore receive a more lenient sentence.

The government, citing USSG §§ 3B1.1, 3B1.2, argues that the Guidelines, "through provisions enhancing or reducing a defendant's sentence depending on his role, already account for proportional differences in culpability among perpetrators of a crime."

This circuit has previously held that proportionality in sentences may support a departure. *See United States v. Nelson,* 918 F.2d 1268, 1273 (6th Cir.1990)("[W]e conclude that the district courts generally … are not precluded as a matter of law from departing from the guidelines in order to generally conform one conspirator's sentence to the sentences imposed on his co-conspirators."). This court has, in fact, specifically noted that § 3B1.2 does not preclude consideration of the goal of proportionality among indicted co-conspirators as a basis for departure. *United States v. Epley,* 52 F.3d 571, 583 (6th Cir.1995)(but refusing to allow departure to achieve proportionality among unindicted co-conspirators). All of these cases on proportionality, however, concern a defendant's sentence being reduced to a level similar to those of a co-defendant. Here, the other perpetrators have received longer sentences than Crouse, and the court departed below the levels for the co-conspirators in order to sentence Crouse disproportionately. Neither *Epley* nor the Guidelines authorize a downward departure to place Crouse's sentence significantly below those of the other perpetrators because of his more insignificant role in the offense, as the Guidelines do allow for that scenario under USSG §§ 3B1.1 and 3B1.2. Therefore, the district court should not have departed downward because of proportionality. It abused its discretion by considering that factor under the circumstances of this case.

In sum, we find that civic works was a permissible ground for the district court to consider in departing downward. However, Crouse's exemplary behavior during his home confinement and his appeals, the collateral consequences to his reputation and business, and proportionality were impermissible factors. Despite our finding that some of the cited grounds for departure were forbidden, the sentence may still be reasonable, "provided that the remaining reasons are sufficient to justify the magnitude of the departure." *Williams,* 503 U.S. at 204, 112 S.Ct. 1112. Therefore, we will review the reasonableness of the departure in light of Crouse's civic contributions, the only permissible ground relied upon by the district court.

## B.

The extent of the downward departure was unreasonable in this case. Crouse's original offense level under the Guidelines was 19 with a criminal history category of I. Taking into account the 4–level departure granted by the district court for the 12 months of home confinement served by Crouse, his offense level was 15. Under the 1987 Guidelines, the range of imprisonment was 18 to 24 months. In order to reach a level for which home confinement alone could be used as a substitute for imprisonment, the district court had to depart downward 9 additional levels to an offense level of 6. That drastic departure, especially in light of the fact that it resulted in no incarceration, is not supported by Crouse's civic contributions.

Crouse's community works, while found to be significant by the district court, are not unusual for a prominent businessman. Examples of Crouse's community involvement include church activities; service on the boards of various community organizations, including a local hospital, the United Way, and the regional airport authority; and his membership and active involvement with the Rotary Club. These examples of community involvement spanned over at least a 25–year period. The community contributions cited by Crouse and his supporters consist primarily of his time commitments and do not mention monetary contributions.

The extent of any departure must be tied to the structure of the Guidelines. *See, e.g., United States v. Shumway*, 112 F.3d 1413, 1429 (10th Cir.1997)("The district court may use any reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure" (citations and internal quotation marks omitted)); *United States v. Sablan*, 90 F.3d 362, 365 (9th Cir. 1996)(in making a departure decision, the district court has discretion but is "not free to divest itself entirely of the structure of the Guidelines."). In assessing the reasonableness of upward departures from the Guidelines, other circuits have required district courts to "determine the extent of an upward departure by comparing the seriousness of the aggravating factors that motivate the departure with the adjustments in base of-

fense level prescribed by the guideline provisions that apply to conduct most closely analogous to the defendant's offense conduct." *United States v. Horton*, 98 F.3d 313, 317 (7th Cir.1996) (citations omitted); *see also United States v. Baird*, 109 F.3d 856, 872 (3d Cir.1997)(Guidelines provide objective standards of reasonableness through "analogies to which sentencing courts must look when making their determinations"). Although a district court may not be able to determine the extent of a downward departure through the same type of analogies, it should be guided by the structure of the Guidelines in its determination of the scope of a departure. In this case, the district court made no reference to the Guidelines in determining the scope of its downward departure. In effect, it determined the result it wanted to reach—no jail time for Crouse—then departed downward to a level that would allow that result. That fact is obvious from the confusion among the parties, the district court, and this court regarding the number of levels the district court departed. *See Kohlbach*, 38 F.3d at 838. Such an approach is an abuse of discretion and, in this case, resulted in a departure that was unreasonable in scope.

In resentencing, the district court should only consider community affairs and good works in determining whether Crouse warrants a downward departure. Moreover, if he does deserve a departure, the court should determine the extent of the departure under the rest of the circumstances of the case.

VACATED and REMANDED.