**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 9 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellant,

v.

GARY SYD GOLDBERG,

       Defendant - Appellee.

No. 01-5052

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 00-CR-117-BU)**

---

Richard A. Friedman, Attorney, Appellate Section, Criminal Division, Department of Justice, Washington, D.C. (Thomas Scott Woodward, United States Attorney, and Susan K. Morgan, Assistant United States Attorney, Northern District of Oklahoma, Tulsa, Oklahoma, with him on the briefs), for Plaintiff-Appellant.

Robert Nigh, Jr. (Clark O. Brewster with him on the brief), Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **EBEL,** Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **HENRY**, Circuit Judge.

---

**EBEL**, Circuit Judge.

---

Gary Syd Goldberg was convicted of possession of child pornography in violation of 18 U.S.C. § 2252(a)(2). At sentencing, the district court made an eight-level downward departure from the United States Sentencing Guidelines ("Guidelines") offense level, resulting in a reduction from twenty seven to thirty three months of imprisonment with two to three years probation to an actual sentence of no imprisonment with five years of probation, including six months of electronically monitored home detention, participation in a mental health treatment program, and 3,900 hours of community service (fifteen hours per week). This appeal is brought by the Government to challenge the district court's downward departure.

The central issue before us is whether the degree of the downward departure was an abuse of the district court's discretion. We conclude that the district court's rationale for the degree of departure was erroneous in two respects. First, the district court failed to apply a reasonable methodology hitched to the Guidelines, erroneously justifying the degree of departure by the resulting sentence. Second, the court's determination to impose a non-incarceration sentence was predicated on impermissible factors already accounted for in the Guidelines. We vacate the sentence and remand.

## I. FACTS

Various government agencies together sponsored a website designed to ensnare persons with an interest in illegal child pornography. Goldberg, who was employed as chief executive of the American Corn Growers Association, received an email inviting him to visit the site. He did so, and on August 2, 2000 he ordered five graphic child pornography videos. The record makes clear that Goldberg purchased these videos with the purpose of obtaining sexually explicit videos of minors. The tapes were delivered on August 14, 2000. Shortly afterward, Goldberg had begun viewing one of the films when an Oklahoma City postal inspector and other officers knocked on his door, search warrant in hand.

The arresting officers advised Goldberg of his <u>Miranda</u> rights, and Goldberg agreed to waive his rights and cooperate fully. He told the officers that, in addition to readily found images on his desktop computer, he also had child pornographic images on computer discs in an upstairs office closet and on a laptop computer that was then being repaired. Although there is some dispute as to precise numbers, it is clear that the officers ultimately recovered several hundred illegal sexually explicit still or video images of minors.

Since his arrest, Goldberg has demonstrated remorse and a determination to rehabilitate himself and to deter similar offenders. He voluntarily entered into individual treatment for the issues leading to his illegal acts, seeing a therapist

eleven times in the five months prior to his sentencing. He volunteered to give a four-hour interview to provide information for a research project aimed at preventing internet crimes against children. He volunteered to write a grant for funds for a cyber pornography prevention project of the Augustus Institute. Finally, he volunteered to provide a taped interview for a nationally syndicated radio columnist, an interview ultimately not broadcast.

The presentence report (PSR) assigned Goldberg an offense level of 18[1] and a criminal history category of I. The resulting sentence guideline was twenty seven to thirty three months of imprisonment. The author of the PSR originally declined to recommend a downward departure; after feedback from Goldberg and the Government he stated that the matter was best left to the special competence of the district court. The PSR author did recommend that "if the Court does grant a downward departure, the probation officer must recommend that the Court not depart below an eighteen-month sentence." This recommendation was based on the author's conclusion that if Goldberg was unable to control his sexual urges,

_____

[1] Under Guideline § 2G2.4(a), the base score for possession of child pornography is 15. The PSR recommended a two-level enhancement because some of the materials involved children under the age of twelve, § 2G2.4(b)(1), a two-level enhancement because the offense involved ten or more items of child pornography, § 2G2.4(b)(2), and a third two-level enhancement because the offense involved a computer, § 2G2.4(b)(3). Finally, the PSR recommended a three-level reduction for complete and timely acceptance of responsibility, § 3E1.1.

"it is most likely vital" that he attend a sex offender treatment program in federal prison for which an eighteen month sentence was required.

The district court held a lengthy sentencing hearing on February 28, 2001. Four witnesses testified – a psychologist, a staff person for the National Center on Institutions and Alternatives, Goldberg, and a probation officer. At the conclusion of the sentencing hearing, the court ruled that a downward departure was appropriate. The court's explanation for its decision as to whether to depart downward is as follows:

> The Court finds that a downward departure is warranted in this case. The downward departure is based upon some combined factors of extraordinary community service, adverse collateral employment consequences as a result of incarceration, and extraordinary post-offense rehabilitation. And maybe you can do some good in that area.
> The Court departs downward in this case for the above reasons and the factual basis of them are set forth in this record.

(App. 316-17.) The court then announced the degree of departure and the sentence. It explained its decision as to how much to depart downward as follows:

> The Court imposes this sentence because the defendant is a first time offender. He has had treatment. The Court does not believe that there will be a reoccurrence of the downloading of pictures, which as I say – which, as I previously stated, there was not an offense where pictures were taken, nor was there any luring of children.
> I think this record substantiates the fact that there has been extraordinary post-offense rehabilitation and I believe

that there will be a significant effort on behalf of the defendant to address this problem.

(Id. at 317.)  On this basis, the court "depart[ed] downward eight levels to a level 10, resulting in a guideline range of six to twelve months, which is in Zone B of the sentencing table."  (Id.)  The significance of a Zone B sentence is that such sentences can be ordered satisfied by a term of home confinement without requiring incarceration.  U.S.S.G. § 5C1.1(c)(3).

On appeal, the Government concedes that there are permissible grounds for downward departure in this case, and it concedes that "a modest downward departure would be reasonable on this record."

## II.  METHODOLOGY REQUIRED TO EXPLAIN EXTENT OF DEPARTURE

The broad framework for analysis of a district court's sentencing departure decision is provided by United States v. Collins, 122 F.3d 1297 (10th Cir. 1997).  The validity of a particular departure depends upon:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure, (3) whether the record sufficiently supports the factual basis underlying the departure, and (4) whether the degree of departure is reasonable.

- 6 -

Id. at 1303.  We have explained our standard of review in performing each of these inquiries as follows:

> All four inquiries are subject to a unitary abuse of discretion standard, understanding that a district court by definition abuses its discretion when it makes an error of law. Applying this standard, we need not defer to the district court's determination of an issue of law, such as that presented by the first inquiry pertaining to the permissibility of departure factors.  However, we must give substantial deference to the district court when making the second inquiry, because the heartland determination is primarily a factual inquiry. Similarly, our review of the underlying factual determinations relevant to the third inquiry is limited to clear error.

United States v. Benally, 215 F.3d 1068, 1073 (10th Cir. 2000) (alteration and internal quotation marks omitted).   In determining whether the degree of departure is reasonable per the fourth inquiry, "the appellate court should afford the trial court some discretion, as we should not lightly overturn determinations of the appropriate degree of departure."  United States v. Flinn, 987 F.2d 1497, 1504 (10th Cir. 1993) (internal quotation omitted).  In sum, a "district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court."  Koon v. United States, 518 U.S. 81, 98 (1996).

Nevertheless, we have consistently required that "the district court must specifically articulate reasons for the degree of departure using any reasonable methodology hitched to the Sentencing Guidelines, including extrapolation from

or analogy to the Guidelines." United States v. Hannah, 268 F.3d 937, 941 (10th Cir. 2001) (emphasis added, internal quotation marks omitted); accord United States v. Neal, 249 F.3d 1251, 1258 (10th Cir. 2001); United States v. Bartsma, 198 F.3d 1191, 1196 (10th Cir. 1999); United States v. Checora, 175 F.3d 782, 794 (10th Cir. 1999); Collins, 122 F.3d at 1309; United States v. Shumway, 112 F.3d 1413, 1429 (10th Cir. 1997); Flinn, 987 F.2d at 1504; United States v. St. Julian, II, 966 F.2d 564, 569 (10th Cir. 1992); United States v. Little, 938 F.2d 1164, 1166 (10th Cir. 1991); United States v. Harris, 907 F.2d 121, 123-24 (10th Cir. 1990).

Our fullest explanation of what constitutes a "reasonable methodology hitched to the Sentencing Guidelines" was provided in United States v. Whiteskunk:

> [W]e [have] rejected the notion that the Koon unitary abuse of discretion standard changed our pre-Koon mechanistic approach requiring the district court to state with particularity and with reference or analogy to the Guidelines the basis for its degree of departure. . . . [O]ur decisions have continued to maintain this standard. We have declined to follow the Ninth Circuit's less rigid analysis of the district court's degree of departure espoused in United States v. Sablan, 114 F.3d 913, 918-19 (9th Cir.1997) (en banc), where that court abolished the requirement that district courts justify their degree of departure by drawing analogies to the Sentencing Guidelines.
> In the present case, the district court gave almost no rationale for its degree of departure from the Guideline range, stating only the departure is warranted because it "more appropriately reflects the dangerousness of the defendant's conduct, as well as the extent to which risked [sic] the

potential death of another." This explanation does nothing more than restate the justification for upward departure and does not fulfill the separate requirement of stating the reasons for imposing the particular sentence. In departing upward, the district court should have attempted to predict what the Sentencing Commission would have established as a guideline range had it adequately considered the circumstances justifying the departure. The district court's findings leave us with no reasonable indicia of whether the sentence is proportional to the crime. We do not require the district court to justify the degree of departure with mathematical exactitude, but <u>we do require the justification to include some method of analogy, extrapolation or reference to the sentencing guidelines</u>.

162 F.3d 1244, 1253-54 (10th Cir. 1998) (emphasis added, citations, footnote, and internal quotation marks omitted).

In the present case, the district court's justification for the degree of departure was devoid of any "analogy, extrapolation or reference to the sentencing guidelines." <u>Id.</u> at 1254. The explanation given by the district court for the sentence it imposed focused on the court's belief that Goldberg was unlikely to recidivate ("[T]he defendant is a first time offender. He has had treatment. The Court does not believe that there will be a reoccurrence of the downloading of pictures. . . . [T]here has been extraordinary post offense rehabilitation . . . .") and that the crime was not more serious ("[T]here was not an offense where pictures were taken, nor was there any luring of children."). These were reasons for <u>some</u> downward departure, but they offer no principled basis for determining the <u>degree</u> of that departure.

- 9 -

Although the district court did not say so explicitly, it is apparent it chose a downward departure of eight levels because such a departure was the minimum necessary to render the defendant eligible for a sentence that did not involve incarceration. The court stated that it chose to "depart[] downward eight levels to a level 10, resulting in a guideline range of six to twelve months, which is in Zone B of the sentencing table." (App. 317.) As noted, the significance of a reduction to Zone B is that a sentence in this zone need not include imprisonment. U.S.S.G. § 5C1.1(c)(3).

It appears, then, that the specific reasons the district court gave for the sentence imposed must have been meant to explain why a non-incarceration sentence is appropriate, although the court did not say so explicitly.[2] Given the district court's analysis, our inquiry must proceed in two stages. First, was the district court's desire to impose a non-incarceration sentence a permissible basis for choosing an eight-level downward departure? Second, were the district court's conclusions that Goldberg was unlikely to recidivate and that the crime

---

[2] We repeatedly have admonished that a district court must state explicitly its reasons for the degree of departure. See, e.g., Collins, 122 F.3d at 1309; Flinn, 987 F.2d at 1503 ("[T]he appellate court should not speculate as to reasoning that might have been employed by the sentencing court to arrive at a particular sentence." (internal quotation omitted)). "Significant departures–those of more than two levels–must be explained with a care commensurate with their exceptional quality." United States v. Seacott, 15 F.3d 1380, 1389 (7th Cir. 1994) (internal quotation marks omitted). Our disposition makes it unnecessary to base our holding on this ground.

was not a more serious one a permissible basis for choosing a non-incarceration sentence?  We answer each of these questions in the negative.

The methodology employed by the district court to determine the degree of departure was not a "reasonable methodology hitched to the Sentencing Guidelines," Hannah, 268 F.3d at 941, because it is based neither on "analogy, extrapolation, or reference to the sentencing guidelines," Whiteskunk, 162 F.3d at 1254, nor on other sentences imposed under the Guidelines.  The approach used by the district court is not consistent with the fundamental goal of enacting the Guidelines, which was "to promote uniformity in sentencing for federal crimes." United States v. Hines, 133 F.3d 1360, 1364 (10th Cir. 1998) (citing U.S.S.G. Ch. 1 Pt. A).

Our established rule that the district court must justify the extent of its departure by a reasonable methodology hitched to the guidelines is consistent with the majority of other circuits that have confronted the issue.  See United States v. Crouse, 145 F.3d 786, 792 (6th Cir. 1998) (holding that "[t]he extent of any departure must be tied to the structure of the Guidelines," and concluding that the district court violated this principle and abused its discretion when it "determined the result it wanted to reach–no jail time for Crouse–then departed downward to a level that would allow that result"); United States v. Seacott, 15 F.3d 1380, 1389 (7th Cir. 1994) ("[T]he district court concluded that the defendant should not

- 11 -

serve any time in prison, and then departed downward four levels to achieve that result. . . . [S]uch a method of departing, completely untethered to the structure, rationale or methodology of the Guidelines, is impermissible. The guidelines must be used as a reference when departing." (internal quotation marks omitted)); cf. United States v. Terry, 142 F.3d 702, 707 (4th Cir. 1998) ("In determining [the appropriate degree of departure], the sentencing court should first consider the rationale and methodology of the Sentencing Guidelines. In particular, it is often helpful to look to the treatment of analogous conduct in other sections of the Sentencing Guidelines. In the event the Sentencing Guidelines do not provide any useful analogies, however, the sentencing court must set forth some form of principled justification for its departure determination." (citations, footnotes, and internal quotation marks omitted)); United States v. Puello, 21 F.3d 7, 10 (2d Cir. 1994) ("A sentencing court is encouraged to look to analogous guideline provisions to determine the extent of departure." (internal quotation marks and alterations omitted)). But cf. United States v. Sablan, 114 F.3d 913, 919 (9th Cir. 1997) (case did not involve a predetermined result but nevertheless the court held, in a six to five en banc decision, that degree of departure need not be determined by analogy to the Guidelines).

Significantly, our research reveals no opinion from another circuit approving of a methodology such as that employed by the district court here; as

noted above, both the Sixth and Seventh Circuits explicitly have rejected such a methodology.  See Crouse, 145 F.3d at 792; Seacott, 15 F.3d at 1389.

There is one Tenth Circuit case that arguably justifies the degree of departure by referring to the resulting sentence rather than to an analogy to the Guidelines.  In United States v. Jones, 158 F.3d 492, 505-06 (10th Cir. 1998), we noted that the sentencing court had approved a three-level downward departure "because that was exactly the extent of downward departure required . . . to 'reach Zone B [of the sentencing table], which would allow a sentence of probation.'"  Id. at 505.  In affirming the district court's departure decision, we noted that "only a sentence of probation would address the district court's explicit concern with maintaining the ongoing, and apparently effective, rehabilitative counseling relationship."  Id. at 505-06; see also id. at 503-04.  We also noted that incarceration would impose "unique burdens" on Jones by causing him to lose a good job in an economically depressed area.  Id. at 498-99.

Those statements could be read to suggest that the degree of departure may be properly justified by the resulting sentence.  Such a reading would be inconsistent with our prior precedent.  See Collins, 122 F.3d at 1309; Shumway, 112 F.3d at 1429; Flinn, 987 F.2d at 1504; St. Julian, II, 966 F.2d at 569; Little, 938 F.2d at 1166; Harris, 907 F.2d at 123-24.  To avoid conflict with precedent predating Jones, we choose not to read that case in this manner.  In explaining the

- 13 -

district court's departure decision there, the <u>Jones</u> court observed that the district court "also explicitly considered the magnitude of the departure relative to both Mr. Jones' offense level under the Sentencing Guidelines and to guidance provided by our case law." <u>Id.</u> at 505. Although it is not entirely clear from that statement what methodology the district court employed, we will presume that the district court employed a methodology based on the Guidelines. So read, the statements in <u>Jones</u> justifying the degree of departure by referring to the resulting sentence are dicta that should not be followed here.

In sum, we conclude that the district court here abused its discretion by failing to base its degree of departure determination on a reasonable methodology hitched to the Guidelines. This case, involving an eight-level departure, does not fall within the "extremely narrow" class of cases where, even without a valid explanation for the sentence imposed, we independently "can unmistakably determine the reasonableness of the district court's selection of a particular sentence." <u>Flinn</u>, 987 F.2d at 1503.

## III. IMPERMISSIBLE FACTORS WERE CONSIDERED IN EXTENT OF DEPARTURE

We reject the district court's degree-of-departure analysis for a second, independent reason: the court's reliance upon impermissible factors to justify its decision to impose a non-incarceration sentence. As noted above, the district

- 14 -

court's determination not to imprison Goldberg flowed from its view that Goldberg was a first-time offender, he was unlikely to recidivate, and the crime was not more serious.[3] Each of these rationales is impermissible.

The Supreme Court expressly has held that the Guidelines bar sentencing courts from relying as a factor for downward departure upon a defendant's unblemished criminal record and low risk of recidivism, because those factors are fully taken into account in the Guidelines themselves. Koon, 518 U.S. at 111 (quoting 1992 U.S.S.G. § 4A1.3, a provision unchanged in the 2000 U.S.S.G. under which Goldberg was sentenced). Goldberg argues that such a rationale is permissible as a basis for calculating the extent of departure, even if it is impermissible for determining whether to depart. Goldberg offers neither authority nor logical support for this position, and we decline to adopt it. We conclude that the district court abused its discretion when it relied upon Goldberg's perceived low risk of recidivism and his lack of an earlier criminal record as a basis for imposing a non-incarceration sentence.

---

[3] Earlier, the Court also noted that the defendant had extraordinary community service, would suffer collateral employment consequences as a result of incarceration, and had extraordinary post-offense rehabilitation. However, that reasoning apparently was offered as justification for a departure rather than to support the degree of the departure. Those factors do not suggest any methodology by which the magnitude of the departure could be ascertained or justified.

As to the district court's other rationale – the fact that Goldberg neither took pictures nor lured children – Goldberg was sentenced under section 2G2.4, the Guideline provision entitled "Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct." A separate provision, section 2G2.1, with a base offense level of 27 rather than 15, covers "Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material." Thus, the Guidelines explicitly take into account the factor of taking pictures or luring children into photography by providing for an <u>increase</u> in the offense level from 15 to 27. The heartland for a section 2G2.4 offense is possession of child pornography <u>not</u> involving taking pictures or luring children. Downwardly departing from level 15 because of an absence of those factors is not a permissible basis for imposing a particular lesser sentence, and the district court's conclusion to the contrary was an abuse of discretion. <u>See, e.g.</u>, <u>United States v. Grosenheider</u>, 200 F.3d 321, 332 (5th Cir. 2000); <u>United States v. Stevens</u>, 197 F.3d 1263, 1270 (9th Cir. 1999); <u>United States v. Barton</u>, 76 F.3d 499, 503 (2d Cir. 1996).

In short, the reasons relied upon by the district court to justify its belief in the desirability of a non-incarceration sentence were impermissible. We do not decide what magnitude of departure the district court could properly have made

on these facts, although we note that a departure of eight levels is remarkable and must be reserved for truly extraordinary cases.

## IV.  DECISION TO DEPART

As noted above, the Government concedes on appeal that some amount of downward departure was reasonable in this case.  The Government nonetheless argues that some of the factors relied upon by the district court in deciding whether to depart were impermissible.  Although we agree that the district court based its decision whether to depart on one factor – collateral employment consequences[4] – that was not established in this record to be outside of the heartland, we conclude that the district court would have departed downward even if it had not relied upon that unsupported factor.  Cf. Koon, 518 U.S. at 113.

---

[4] Although sentencing courts are not barred in all cases from concluding that collateral employment consequences are a factor contributing to the decision to depart, see Jones, 158 F.3d at 498-99, "it is not unusual for any individual to suffer employment consequences as a result of incarceration."  Id. at 499; cf. Koon, 518 U.S. at 110-11 (abuse of discretion to consider defendants' job loss as a departure factor because public employees often lose their jobs for violating a person's rights and "these consequences were adequately considered by the Commission").  Here, Goldberg does not seriously argue that the impact of incarceration on his employment situation is extraordinary.  Instead, he argues that the district court's phrase "adverse collateral employment consequences as a result of incarceration" refers, not merely to Goldberg's own employment, but also to the interests of the poor and minority farmers on whose behalf he advocates.  We find this an implausible interpretation of the district court's language, particularly in light of Goldberg's inability to point to evidence in the record that Goldberg's imprisonment would result in adverse employment consequences for the farmers.

Based on the court's explanation at sentencing and the focus of the parties' sentencing presentations, it seems clear that the factor that loomed the largest in the mind of the court was Goldberg's extraordinary post-offense rehabilitation. The court made only passing mention of employment consequences as a basis for departure. Further, the fact that the court granted such a large downward departure is strong evidence that the decision of whether to depart in the first place was not a close one. Finally, the Government itself concedes that downward departure is appropriate. Thus, we conclude that the district court's reliance upon one improper factor in its decision to make a departure does not require reconsideration of this issue at resentencing.

## V. CONCLUSION

For the foregoing reasons, we VACATE the district court's sentence and REMAND for determination of the appropriate degree of downward departure.