F I L E D
United States Court of Appeals
Tenth Circuit

AUG 12 2003

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

AGNES M. CORDOVA,

Defendant-Appellee.

No. 02-2193

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR 01-632 MV)

Laura Fashing, Assistant United States Attorney, (David C. Iglesias, United States Attorney, with her on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellant.

Jacquelyn Robins, Esquire, Albuquerque, New Mexico, for Defendant-Appellee.

Before **HARTZ** , **BALDOCK** , and **McCONNELL** , Circuit Judges.

**McCONNELL** , Circuit Judge.

Agnes M. Cordova pled guilty to distribution, and possession with intent to distribute, crack cocaine. At sentencing, the district court departed downward fifteen levels from the United States Sentencing Guidelines ("Guidelines") range

of 46-57 months' imprisonment, and sentenced her to time served in jail (4 days) and 5 years of supervised release. Because we conclude that the degree of the downward departure was an abuse of the district court's discretion, we vacate the sentence and remand.

On three separate occasions in the spring of 2001, Agnes Cordova sold crack cocaine to undercover police officers in Pojoaque, New Mexico. Police arrested Cordova during the third transaction. At the time of the arrest, Cordova was carrying 45.6 grams of crack. She told police that she had been dealing drugs for about three months.

A federal grand jury indicted Cordova on one count of distribution of more than five grams of crack cocaine and one count of possession with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Under a plea agreement, Cordova pled guilty to both counts on October 30, 2001.

The Government and Cordova stipulated in the plea agreement to Cordova's eligibility for (1) a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, (2) a four-level reduction for being a minimal participant under U.S.S.G. § 3B1.2, and (3) a two-level "safety valve" reduction under U.S.S.G. § 2D1.1(b)(6). The presentence report also recommended the safety valve and acceptance of responsibility reductions, but it

recommended that the district court not grant the minimal participant reduction. At sentencing, the district court granted the recommended safety valve and acceptance of responsibility downward adjustments, and, despite the presentence report's contrary recommendation, it also granted the minimal participant adjustment. After the court applied these downward adjustments, Cordova's offense level was 23, which, with a criminal history category of I, resulted in a sentencing range of 46 to 57 months in prison.

Cordova moved for a downward departure of fifteen levels to offense level 8 and sentencing range of 0 to 6 months, so that she could be sentenced to time served and avoid incarceration. Cordova argued that her age, mental and physical condition, family responsibilities, and diminished capacity justified the downward departure. Two expert witnesses testified on Cordova's behalf at the sentencing hearing. Mary Jane Sak, a clinical counselor, described numerous physical, mental, and emotional ailments from which Cordova suffered. She also explained that Cordova exhibited an abnormal anxiety for her son, and that she had been driven to deal drugs because she was desperate for money to pay for a lawyer who could help her son get out of prison. Dr. Thomas Thompson, a board-certified neuropsychologist, administered a number of psychological tests to Cordova and concluded that she suffered from an impaired frontal lobe which inhibited her capacity for problem solving and rational judgment.

The district court granted the fifteen-level downward departure and sentenced Cordova to time served in jail and five years of supervised release. The court based its departure on Cordova's reduced mental capacity and on her physical and mental condition. While the court acknowledged that fifteen levels was a "significant departure," it explained the degree of its departure as follows:

> The reason for the departure to [offense level] 8 is to be able to punish Ms. Cordova for the conduct in which she has engaged in [ *sic* ], but punish her in a way that is not irreversibly detrimental to her health.
> . . . .
> . . . She needs to be able to have a consistent availability of the medications and monitoring of the medications, and she needs the support of her family.
> The extent of the departure is also justified by Dr. Thompson's opinion in his report and in his testimony today that indicated that the reduced mental capacity significantly contributed to the commission of this crime. It wasn't a peripheral issue or a marginal issue. It was a significant reason for the commission of this offense.

The Government objected to the sentence and filed this appeal. On appeal, the Government does not contest the district court's decision to depart downward from the applicable Guidelines range based on Cordova's reduced mental capacity. However, the Government contends that the degree of the departure was unreasonable.

We review the degree of the district court's departure for an abuse of discretion. "In determining whether the degree of departure is reasonable . . . , 'the appellate court should afford the trial court some discretion, as we should not lightly overturn determinations of the appropriate degree of departure.'" *United*

*States v. Goldberg*, 295 F.3d 1133, 1138 (10th Cir. 2002) (quoting *United States v. Flinn*, 987 F.2d 1497, 1504 (10th Cir. 1993)).

To justify its degree of departure, the district court "must specifically articulate reasons for the degree of departure using any reasonable methodology hitched to the Sentencing Guidelines, including extrapolation from or analogy to the Guidelines." *United States v. Hannah*, 268 F.3d 937, 941 (10th Cir. 2001) (internal quotation marks omitted). The district court's explanation must do more than restate the justification for the departure, because the requirement that the court state reasons for the degree of departure is separate and distinct from the requirement that it explain why a departure is warranted. *United States v. Whiteskunk*, 162 F.3d 1244, 1254 (10th Cir. 1998). The sentencing court should attempt to predict what sentencing range the Sentencing Commission would have established if it had considered the circumstances. *Id.* Justification with "mathematical exactitude" is not required, but the explanation must include "some method of analogy, extrapolation or reference to the sentencing guidelines." *Id*. (internal quotation marks and citation omitted). Finally, the district court may not determine *ex ante* that the defendant should not serve any jail time and then choose a degree of departure to achieve the desired result. *Goldberg*, 295 F.3d at 1139-40.

Cordova argues that the district court's rationale was properly grounded in the Guidelines, because the departure was based primarily on the extent of Cordova's reduced mental capacity, which is a permissible reason for departure from the Guidelines. *See* U.S.S.G. § 5K2.13. The Guidelines provide that if the court departs on this basis, "the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense." *Id*. As noted above, the district court stated that one reason justifying its degree of departure was that Cordova's reduced mental capacity "significantly" contributed to her commission of the crime. However, a fifteen-level departure cannot be justified merely by a finding that reduced mental capacity was a significant factor in the crime. The defendant must have acted under the influence of a significantly reduced mental capacity to be eligible for any departure at all. U.S.S.G. 5K2.13 ("A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity."). In this context, the district court's explanation for the degree of departure essentially restates the justification for departure in the first place. An explanation that "does nothing more than restate the justification for . . . departure . . . does not fulfill the separate requirement of stating the reasons for imposing the particular sentence." *Whiteskunk* , 162 F.3d at 1254 (internal quotations and citation omitted).

It seems clear that the primary reason that the district court departed as far downward as it did was so that Cordova could avoid incarceration and continue to benefit from support from her family and therapist.  Our decision in *Goldberg* specifically forbids this sort of justification.  *Goldberg* rejected a district court's result-oriented eight-level departure to ensure the defendant's eligibility for a non-incarceration sentence because the district court's methodology was not based on analogy or reference to the Guidelines and was inconsistent with the Guidelines' fundamental goal of promoting uniformity in sentencing.  *Goldberg*, 295 F.3d at 1139.  Here, the district court's approach, resulting in a departure nearly twice as large as the one rejected in *Goldberg*, is similarly lacking in references to the Guidelines and is inconsistent with its goals.  We must therefore remand for resentencing.

It is not our place, as an appellate court, to usurp the role of the district court in determining the proper degree of departure on remand.  In view of the extraordinary, and essentially unjustified, degree of departure directed by the district court at the initial sentencing, however, we feel constrained to observe that our review of the record does not suggest that a departure in excess of the

two to four levels recommended by the government at oral argument would be appropriate. [1]

For these reasons, we VACATE the district court's sentence and REMAND for determination of the appropriate degree of departure.

---

[1]To the extent the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 (Protect Act), Pub. L. No. 108-21, 117 Stat. 650 (April 30, 2003), affects this case, a matter not briefed by the parties due to the Act's recent enactment, we hold that the district court may depart to some degree based on Cordova's significantly reduced mental capacity. *See* 18 U.S.C. § 3742(g)(2)(B). The Government does not dispute that such a departure is appropriate in this case, and there is sufficient evidence in the record of Cordova's reduced mental capacity to support departure on this basis.