**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 19, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES of AMERICA,

      Plaintiff-Appellant,

v.

MARTIN MAESE,

      Defendant-Appellee.

No. 03-2299
(D.C. No. CR-02-1179-MV)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**HENRY**, Circuit Judge.

Defendant-Appellee Martin Maese ("Maese") pled guilty to misprision of a

felony in violation of 18 U.S.C. § 4. At sentencing, the district court departed

downward eight levels from the applicable United States Sentencing Guidelines

("Guidelines") offense level after finding Defendant's criminal behavior was

aberrant, especially in light of his exceptional record of community service along

the Texas-Mexico border. This resulted in a reduction from a Guideline range of

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

21 to 27 months of imprisonment to an actual sentence of eight days, time served, and one year of supervised release.

The Government appeals only the degree of the departure in this case, arguing that the district court reached an unreasonable result. Given the deference we owe the district court in this regard, we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b) and AFFIRM.

## BACKGROUND

Martin Maese owns a trucking business called MAM Trucking, Inc. Border Patrol agents found 1,837 pounds of marijuana, along with 37,000 pounds of used clothing, in one of Maese's tractor-trailer rigs at a checkpoint in New Mexico. Maese had personally sold the used clothing found inside the rig and had negotiated the relevant shipping arrangements, ultimately agreeing to help transport the clothes to Minnesota.

After Maese's trailer was searched and seized at the checkpoint, a customs agent called Maese and asked him to identify who was responsible for concealing the marijuana. Maese told the agent he did not know, but in fact he suspected the buyers of the used clothing were involved in the transportation of the marijuana.

A grand jury indicted Maese for conspiring to possess more than 100 kilograms of marijuana with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and § 846. Pursuant to a plea agreement, Maese pled

- 2 -

guilty to misprision of a felony, in violation of 18 U.S.C. § 4, for concealing the name of the responsible shippers.

The presentence report (PSR) assigned Maese an offense level of 16 and a criminal history category of I. The resulting guideline range was 21 to 27 months of imprisonment. Defendant filed a motion to depart based on aberrant behavior. Defendant argued that he had pled guilty to only a "single act of aberrant behavior" by initially concealing the identity of the clothing buyer when asked who was responsible for the marijuana shipment. He further asserted that such a departure was warranted due to his history of steady employment, his record of significant "charitable endeavors to benefit underprivileged people," and the efforts he took to mitigate his offense by "allowing himself to be debriefed . . . in an effort to fully co-operate with the authorities."

Maese also presented to the court sixteen letters attesting to Maese's good character and significant community service. These letters, along with Defendant's explanation of them, revealed a consistent history of Defendant and his wife performing what the district court described as "compelling" service along the Texas-Mexico border, from which the district court concluded that "prior to this incident, [Defendant] conducted [his] life in an extraordinary manner."

The letters indicate that Defendant regularly loans the use of his warehouse facilities to groups storing building materials, medical equipment, and other supplies for charity work in the border area. He also regularly travels to Mexico to provide basic medical, educational, and translation services; solicits donations of medical equipment and food; helps build homes; and serves as a leader in his church. In addition, Maese sponsored a high school student with a difficult home situation, promising to match every dollar the student saved for college.

After reviewing this evidence, the district court said,

> I have not seen anybody else come before me, in the ten years that I have been on the bench, that has been involved in all of the—all of the good works that you have been involved with. . . . I am just surprised at the magnitude of—of the work, the time, and the commitment that you have to individuals that have a lot less than you.

The court concluded that a downward departure based on aberrant behavior was "more than justified."[2]

---

[2]Maese was sentenced under the 2002 sentencing guidelines. At that time, the applicable aberrant behavior policy statement provided that "[a] sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior." U.S.S.G. § 5K2.20 (2002). The commentary further provided:

> "Aberrant behavior" means a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life. . . .

(continued...)

The district court reduced Maese from an offense level 16 to an offense level 8 and imposed a sentence of eight days, which was time served, and a one-year period of supervised release. However, the court held the sentence in abeyance to allow the prosecution further opportunity to review the letters. In a phone conference approximately two weeks later, the government reported that the letters had been confirmed. Then, over the government's objection, the court affirmed its earlier sentence, stating:

> the extent of the departure was to allow Mr. Maese to continue this [community service] effort. I wanted to give him credit for the eight days . . . served, but allow him to continue the work that I've never seen anybody do along the border, and that was the reason for the downward departure, and that was the explanation for the extent of the downward departure.

Nine days later the court filed a written memorandum opinion and order further setting out its reasoning in this case. In that opinion, the district court noted that, while the Guidelines provide for aberrant behavior departures, they leave the "decision as to whether and to what extent departure is

_____

[2](...continued)
In determining whether the court should depart on the basis of aberrant behavior, the court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense.

Id. appl. n.1 & 2.

warranted . . . with the sentencing court on a case-specific basis." U.S.S.G.

§ 5K2.0 (2002). As explanation for the chosen degree, the court wrote:

> While not fully understanding what exactly constitutes a "reasonable methodology hitched to the Sentencing Guidelines," the Court has seriously studied and considered the basic purposes of criminal punishment as articulated by the Guidelines. See 18 U.S.C. § 3553(a)(2). The Court has weighed the goals of just punishment, deterrence, rehabilitation, and uniformity of sentences against the express contemplation of sentences outside the range established by the applicable guidelines. Thus, the court has considered Defendant in comparison with the many other defendants sentenced before the Court, and has determined that an eight-level departure will incorporate the mitigating factors warranting a sentence below the guideline range, while properly maintaining the integrity of the basic purposes of criminal punishment. With an eight-level departure, Defendant faces a sentence of eight days (time served) with one year of supervision, which the Court believes satisfies sufficiently the goals of punishment, deterrence and the protection of the public. Given Defendant's history, the Court does not believe that a period of incarceration is necessary or would be equitable under the circumstances. Moreover, Defendant's sentence will allow the Court to supervise Defendant while also permitting him to continue his much needed work along the very deprived Mexican border.

The Government timely filed this appeal.[3]

---

[3]Both the United States and Defendant Maese filed motions with this court to seal their briefs in this case. The lower court proceedings were sealed below. However, at oral argument before this court, the Government saw no prosecutorial purpose for sealing proceedings in this appeal, and Defendant was ambiguous about any security concerns.

Courts have discretion to seal documents "if the public's right of access is outweighed by competing interests." United States v. Hickey, 767 F.2d 705, 708 (10th Cir. 1985) (quotation omitted). Neither side has made a showing of any compelling reason to seal these records in this appeal. Therefore, we order the Government and Defendant's counsel to meet and submit to this court, within

(continued...)

**DISCUSSION**

Before this court, the Government does not object to the district court's determination that a sentence outside the applicable guideline range in this case is warranted and consistent with the aberrant behavior departure policy statement.[4] Instead, the Government argues only that the degree of the departure—and therefore the length of Maese's ultimate sentence—is unreasonable.

Maese was sentenced before the Supreme Court decided United States v. Booker, 125 S.Ct. 738 (2005), which dramatically changed the federal sentencing landscape.[5] However, both before and after Booker, the degree of departure from the applicable guidelines range is reviewed for unreasonableness. Compare 18

---

[3](...continued)
thirty days of the filing date of this order and judgment, what portions of these proceedings they wish to redact. We will then consider their requests and enter an appropriate order.

[4]Because Maese's offense of conviction, misprision of a felony, arose after Maese concealed who was responsible for the 1800 kilograms of marijuana found in his trailer, this court questioned counsel at oral argument regarding the applicability of § 5K2.20's express prohibition of aberrant behavior departures where the "instant offense of conviction is a serious drug trafficking offense." U.S.S.G. § 5K2.20(c)(3) (2002). However, § 5K2.20 defines "serious drug trafficking offense" to mean only certain "controlled substance offense[s] under title 21, United States Code." Id. at § 5K2.20, appl. n. 1. Because Defendant's misprision of a felony under 18 U.S.C. § 4 is clearly not within title 21 of the United States Code, we agree that an aberrant behavior departure is not categorically barred here.

[5]The parties have not discussed the impact of Booker in this appeal.

U.S.C. § 3742(e)(3)(C) (pre-Booker standard) with Booker, 125 S.Ct. at 766 (replacing § 3742(e) with "unreasonableness" review of all sentences).

However, although our standard of review for this issue is essentially unchanged, we note that before Booker these discretionary departures were considered against a mandatory sentencing scheme, while after Booker the guidelines are entirely advisory. See Booker, 125 S.Ct. at 765. Our post-Booker cases have noted that Booker's reasonableness review is inappropriate for a pre-Booker sentence imposed under the then-mandatory scheme. See, e.g., United States v. Souser, 405 F.3d 1162, 1165 (10th Cir. 2005). Nonetheless, in the context of our review of this particular discretionary degree-of-departure question, we are informed by, and must take account of, the fact that the district court would have enhanced discretion upon remand after Booker. Moreover, even in an exclusively pre-Booker context, "we give due deference to the district court and will not reverse absent an abuse of discretion." United States v. Jones, 332 F.3d 1294, 1300 (10th Cir. 2003) (citation omitted).

As part of our review, we consider the district court's stated reasons for choosing this particular sentence[6] in light of the 18 U.S.C. § 3553(a) sentencing

_____

[6]Our review is based on the district court's stated reasons for imposing this particular sentence, as stated orally at sentencing and, because this is a departure, as committed to a written order. 18 U.S.C. § 3553(c)(2); accord Booker, 125 S.Ct. at 765-66.

factors, which include "the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities."[7]  United States v. Collins, 122 F.3d 1297, 1308-09 (10th Cir. 1997) (quotation omitted).

Before Booker, we consistently instructed district courts to articulate the reasons for the specific degree of departure using "any reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure, which includes using extrapolation from or analogy to the Guidelines." Id. at 1309 (quotations omitted).  Although the continued relevancy of this "hitching" to the guidelines requirement, see United States v. Nunemacher, 362 F.3d 682, 691 (10th Cir. 2004), is uncertain in light of Booker, we note that the precise method of calculating the degree has always been somewhat flexible, requiring in essence only that the "sentencing court should attempt to predict what sentencing range the Sentencing Commission would have established if it had considered the circumstances." United States v. Cordova, 337 F.3d 1246, 1249 (10th Cir. 2003).

---

[7]These same factors govern our "unreasonableness" review of all discretionary sentences under the advisory sentencing scheme in place after Booker.  Booker, 125 S.Ct. 764-65.

Moreover, the instruction that a sentencing departure be hitched to the guidelines themselves simply makes more sense, and is more feasible, in some cases than in others.  For example, where the court is departing on the basis of an over-representation of a defendant's criminal history, or because the guidelines's grouping rules fail to account for additional offense counts, more methodical stair-stepping of the degree of departure is realistic.  E.g., United States v. Jose-Gonzalez, 291 F.3d 697, 705 (10th Cir. 2002).

However, here we have the unique situation of an aberrant behavior departure where the guidelines themselves contemplate the departure will be warranted only under unique circumstances.  In such a case, any close "hitching" to the structure of the guidelines    would be nearly impossible, if it is even required in any case after Booker.[8]  The sentencing court here carefully considered the §

_____

[8]In at least two prior cases, we have affirmed departures based at least in part on aberrant behavior without discussing separately any "hitching" requirement where the sentence was specifically justified based on the § 3553(a) factors.  See United States v. Peña, 930 F.2d 1486, 1494-96 (10th Cir. 1991) (approving departure from 27 to 33 month range to probation with a condition of community confinement where departure was sufficiently explained and consistent with § 3553(a) factors); United States v. Jones, 158 F.3d 492, 501, 505-06 (10th Cir. 1998) (approving departure down three levels "because that was exactly the extent of downward departure required . . . to reach . . . a sentence of probation with stringent conditions" where "the district court's explicit concern [was] with maintaining the ongoing, and apparently effective, rehabilitative counseling relationship [the defendant] had through his [current employer]" (quotation omitted)).
    We have, however, remanded other aberrant behavior departures where the
(continued...)

- 10 -

3553(a) factors and determined an eight-level departure would best serve the goals of sentencing by providing some supervision and punishment of Maese while also enabling him to continue to his community service work.

We do note that, at least prior to Booker, an eight-level departure was "remarkable and must be reserved for truly extraordinary cases." United States v. Goldberg, 295 F.3d 1133, 1142 (10th Cir. 2002). However, even while working from within a mandatory sentencing scheme, we have previously affirmed up to seven-level departures. E.g., Jones, 332 F.3d at 1306-07. In addition, the district court, in considering Maese's history of service, did find that Maese presents such an "extraordinary case" as he was unique among all of the defendants the judge had sentenced in the last ten years.

Finally, while we have traditionally eschewed any degree of departure aimed solely at a result-oriented effort to keep the defendant out of prison, e.g., Cordova, 295 F.3d at 1249; Goldberg, 295 F.3d at 1139, here the district court carefully explained the chosen degree of the departure consistent with the

---

[8](...continued)
district court gave no reasoning for its chosen degree. United States v. Tsosie, 14 F.3d 1438, 1443 (10th Cir. 1994) (remanding for resentencing where district court "did not give any reasons for departing from a range of 41-51 months to a four month sentence"); Nunemacher, 362 F.3d at 692 (reversing eight-level departure where district court chose that degree "without explanation"). In those cases, we did discuss "hitching" requirements generally; however, because we reversed in the face of no separate reason for the degree of departure, that hitching language is superfluous.

sentencing factors outlined in § 3553(a). The court determined the sentence imposed would "incorporate the mitigating factors warranting a sentence below the guideline range, while properly maintaining the integrity of the basic purposes of criminal punishment." Indeed, in assessing this departure in light of § 3553(a), the court concluded that, with this degree of departure, the sentence "satisfies sufficiently the goals of punishment, deterrence and the protection of the public."

Upon our review, we cannot say that the district court abused its discretion in this regard or that Maese's sentence was unreasonable. Moreover, we simply will not remand for the district court to re-exercise the discretion it now more certainly has after Booker. Accordingly, we AFFIRM the district court.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge